IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DARREN BENANDI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 11-00498-CG-N |
| | ) | |
| MEDIACOM SOUTHEAST, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

This action is before the Court on plaintiff's motion to remand (docs. 6-7), which has been referred to the undersigned pursuant to 28 U.S.C. § 636 (b)(1)(B). Upon consideration of the motion, the response in opposition thereto (doc. 13) filed by Mediacom Southeast LLC ("Mediacom"), the only served defendant, plaintiff's reply (doc. 14), and all other pertinent portions of the record, it is recommended that the motion to remand be **DENIED**.

I. Background.

In his complaint, filed on July 28, 2011 in the Mobile County Circuit Court, Darren Benandi, the plaintiff herein, seeks damages for injuries he sustained when, while jogging, he tripped and fell over "bundles of fiber optic cable" left by the defendant(s) on the "sidewalk and/or right of way." (Doc. 1-1 at ¶ 5). According to the plaintiff, "Mediacom failed to adequately secure, make safe warn and/or remove the bundles of fiber optic cable from the sidewalk and/or right of way." (Doc. 7 at 1). In this litigation, Benandi seeks an unspecified amount of compensatory and punitive damages. (*Id.* at ¶¶ 9, 12). Bernandi does not dispute that "his former counsel submitted a letter dated

May 24, 2010, to Mediacom's insurance carrier" (docs 7 at 2 and 1-4) and that this "settlement demand letter [] offers to resolve Plaintiff's claims for $92,000" (doc. 14 at 1).

On August 26, 2011, the case was removed from the Circuit Court of Mobile County, Alabama, by Mediacom, the only served defendant, pursuant to 28 U.S.C. §§ 1441 and 1446. Mediacom alleges that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Mediacom argues that "the amount in controversy can be ascertained in this case on account of a settlement demand [of $92,000.00] from an attorney representing Benandi." (Docs. 1 at 4, ¶ 9 and 1-4). [1]

On August 30, 2011, Benandi filed a motion to remand (docs. 6-7) and alleges therein that "Mediacom has failed to unambiguously establish that the amount in controversy exceeds $75,000." (Doc. 6 at 1, ¶ 1)[2]. Benandi specifically argues that "Mediacom has not presented substantial evidence to unambiguously establish the existence of federal jurisdiction." (Doc. 7 at 7). The motion has been fully briefed and is now ready for the Court's consideration.

II.     Standard of Review.

It is well established that, "[i]n a removal action, the party asserting jurisdiction has the burden of establishing proof of jurisdiction by a ***preponderance of the evidence***."

---

[1] "Since Defendant timely filed the Notice of Removal within 30 days of service of the Complaint, the issue of whether the pre-suit demand package is an "other paper" for purposes of the second period to file a notice of removal under 28 U.S.C. 1446(b) is not relevant to the inquiry before this Court." Katz v. J.C. Penney Corp, Inc., 2009 WL 1532129, * 5 (S.D. Fla. June 1, 2009).

[2] Benandi does not dispute that the citizenship of these parties is diverse. (Doc. 7 at 2).

Wiltew v. Parker, 2009 WL 3615041, * 2 (S.D. Ala. Oct. 30, 2009)(emphasis added), *citing* McNutt v. General Motors Acceptance Corp. of Indiana, Inc., 298 U.S. 178 (1936); Lowery v. Alabama Power Co., 483 F.3d 1184, 1210 (11th Cir. 2007), *cert. denied sub nom* Hanna Steel Corp. v. Lowery, --- U.S. ----, 128 S.Ct. 2877 (2008). In a removal action, the burden is upon the defendant. *Id.*, *citing* Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). *See also*, Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th Cir. 2008) ("A removing defendant bears the burden of proving proper federal jurisdiction [and] doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court.") (citation omitted); Friedman v. New York Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir. 2005) ("[i]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists") (citation omitted). In addition, "[b]ecause removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand." Holloway v. Morrow, 2008 WL 401305, * 2 (S.D. Ala. Feb. 11, 2008), *citing* University of South Alabama v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction). See also Russell Corp. v. American Home Assur, Co., 264 F.3d 1040, 1050 (11th Cir. 2001)("Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand."). "Thus, under § 1446(b), in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff-be it the initial complaint or a later received paper-and

3

determines whether that document and the notice of removal unambiguously establish federal jurisdiction." Lowery, 483 F.3d at 1213.

"Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount." Pretka v. Kolter City Plaza, II, Inc., 608 F.3d 744, 752 (11th Cir. 2010). A removing defendant need only show that "the amount in controversy *more likely than not* exceeds the . . . jurisdictional requirement." Roe v. Michelin North America, Inc., 613 F.3d 1058, 1061 (11th Cir. 2010)(emphasis added). A removing defendant is not required "to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." Renfroe v. Allstate Property and Cas. Ins. Co., 2010 WL 4117038, * 2 (S.D. Ala., Sept. 23, 2010), *quoting* Pretka, 608 F.3d at 754. "When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement [and] [i]f the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." Beasley v. Fred's Inc., 2008 WL 899249 (S.D. Ala. Mar. 31, 2008), *quoting* Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001).

Settlement offers "count[] for something" in determining whether a plaintiff's claim exceeds the jurisdictional requirement of $75,000, exclusive of interest and cost. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1097 (11th Cir. 1994). This Court has held that a settlement demand is actually relevant evidence of the amount in controversy if it includes specific information to reflect a reasonable estimate of the plaintiff's claim.

4

Jackson v. Select Portfolio Servicing, Inc., 651 F.Supp.2d 1279, 1281 (S.D. Ala. 2009) (citation omitted). In addition, the Eleventh Circuit has now made it clear that "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." Roe, 613 F.3d at 1062.

III. Analysis.

Although Benandi seeks to limit the significance of his pre-suit settlement demand[3], the language employed by his counsel reflects more than mere "puffing and posturing." Doc. 14 at 2, relying upon Jackson, 651 F.Supp.2d at 1281 ("Settlement offers commonly reflect puffing and posturing, and such a settlement offer is entitled to little weight in measuring the preponderance of the evidence."). In Jackson, this Court went on to say:

> On the other hand, settlement offers that provide "specific information ... to support [the plaintiff's] claim for damages" suggest the plaintiff is "offering a reasonable assessment of the value of [his] claim" and are entitled to more weight. Golden Apple Management Co. v. Geac Computers, Inc., 990 F.Supp. 1364, 1368 (M.D. Ala. 1998). [FN2]
>
>> FN2. The demand letter in Golden Apple, for example, tallied up separate elements of hard damages, including software costs, consultant costs and personnel costs. 990 F.Supp. at 1368.

Jackson, 651 F.Supp.2d at 1281. As applied to this case, Benandi's letter contains far more than a lump sum demand for payment of $92,000.00. The letter describes in some

---

[3] Pre-suit settlement offers can be considered by the Court in its evaluation of the amount in controversy. *See e.g.*, Katz v. J.C. Penny Corp., Inc., 2009 WL 1532129, * 4 (S.D. Fla. June 1, 2009)("[I]nformation contained in the pre-suit demand package may be considered . . . [because] . . . a district court may consider evidence outside of the removal petition if the facts therein existed at the time of removal."), *citing, inter alia,* Williams [ v. Best Buy Co., 269 F.3d 1316, 1320 (11th Cir.2001)]; Sierminski v. Transouth Financial Corp., 216 F.3d 945, 949 (11th Cir.2000).

5

detail not only Benandi's injuries but the costs thus far incurred and anticipated, which Benandi's counsel specifically describes as "a conservative estimate." (Doc. 1-4). In the letter, Benandi's counsel states not only that he was enclosing the records of Benandi's treating physician, but that:

> As you recall, Mr. Benandi tripped and fell when his feet became entangled in a cable wire that had been left lying in the street across a driveway in Mr. Benandi's neighborhood. As a result of the fall, Mr. Benandi sustained injuries to his leg, arm and back. Although eventually the left ankle sprain and low back pain symptoms resolved/improved, his shoulder injury has continued to cause him problems. Despite conservative treatment, Mr. Benandi's treating physician has now recommended surgery.
>
> I am enclosing for your review Dr. Matthew's records. As you will note, Mr. Benandi initially underwent a shoulder injection. He was also prescribed medications and a course of physical therapy. Initially, the injection therapy to Mr. Benandi's shoulder improved his symptoms. However, as the effects of the injection wore off, it became apparent that the shoulder injury was not healing. Dr. Matthews ordered an MRI of the shoulder on December 3, 2010. The MRI report revealed a significant superior labral tear which Dr. Matthews attributed to the fall. Surgery was first discussed in January 2010. However, Mr. Benandi chose to continue with additional injection therapy. He had another injection in March. Although the injections have given Mr. Benandi some temporary relief, there is no real improvement in his condition.
>
> Medical charges to date total approximately $4100.00 and are itemized on the enclosed summary. Mr. Benandi intends to move forward with surgery as soon as his work schedule permits. We estimate the cost of surgery along with customary post-surgical recovery and treatment charges to be approximately $12,000 - $15,000. This is a conservative estimate, and assumes there will be no complications or need for additional procedures. Nevertheless, Mr. Benandi has authorized me to propose settlement of his claim at this time. I am currently authorized to accept $92,000.00 in full resolution of this matter. I trust you will find our demand reasonable and fair given the severity of Mr. Benandi's injuries and the circumstances of his fall.

(*Id.*).  Consequently, unlike the lump sum demand at issue in <u>Jackson</u>, Bernandi has provided a non-speculative basis for quantifying the value of his claim, which allows for more than mere speculation with respect to the amount in controversy.

Similarly, this case is distinguishable from <u>Johnson v. Ansell Protective Products</u>, 2008 WL 4493588 (S.D. Ala. Oct. 2, 2008), in which no settlement demand was made by the plaintiff and the defendant had to rely solely on plaintiff's conclusory allegations in the complaint.  It was in that context, therefore, that Magistrate Judge Cassady concluded in <u>Johnson</u> that:

> Nothing about plaintiff's allegations that he sustained "severe burns to his face, neck, shoulders, hands and buttocks" and "permanent scarring" or his claims for medical expenses, pain and suffering, emotional distress, and mental anguish makes it "easy" for the undersigned to deduce that the amount in controversy requirements have been satisfied. Instead, such "evidence" lends itself only to speculative musings regarding the value of such claims based upon the injuries alleged, a journey which Lowery does not allow.

<u>Johnson</u>, 2008 WL 4493588 at *8.  Benandi now contends that his counsel's use of the adjective 'severely' in relation to his injuries equates with the conclusory allegations of the complaint at issue in <u>Johnson</u> and that his counsel's description of the $92,000.00 settlement demand as being "reasonable and fair" is of no significance.  However, unlike the plaintiff in <u>Johnson</u>, Benandi has provided defendant with a specific basis not only for his description of his shoulder injury as "severe" in light of the fact that it will require surgery because more conservative treatment has been ineffective for a significant period of time, but for his $92,000.00 valuation of his claim in light of his medical expenses to date and those specifically anticipated.

7

In addition, it is undisputed that Benandi seeks punitive damages as damages under his wantonness claim. *See* Doc. 1-1 at 8. "Punitive damages must be considered when determining the jurisdictional amount in controversy in diversity cases." <u>Rae v. Perry</u>, 392 Fed. Appx. 753, 755 (11th Cir. 2010), *citing* <u>Holley Equip. Co. v. Credit Alliance Corp.</u>, 821 F.2d 1531, 1535 (11th Cir. 1987). *See also* <u>South Dallas Water Authority v. Guarantee Co. of North America, USA</u>, 767 F.Supp.2d 1284, 1303 and n. 21 (S.D. Ala. 2011)(held that the defendant could have "marshaled enough evidence of the jurisdictional facts to support a notice of removal" . . . "when one considers plaintiff's demand for compensatory and punitive damages in Counts II and III of the complaint."). In this case, Benandi's demand for $92,000.00 is supported by his description of his injuries, including the shoulder injury which has not responded to conservative treatment; the medical expenses incurred to date; his "conservative" calculation of future medical expenses for the anticipated surgery; and his demand for punitive damages "given the severity of [his] injuries and the circumstances of his fall." Benandi's wantonness claim would in fact support an award of punitive damages under Alabama law. *See* <u>Southeast Environmental Infrastructures, L.L.C. v. Rivers</u>, 12 So.3d 32, 36 and 48 (Ala. 2008). See also, <u>Renfroe v. Allstate Property and Cas. Ins. Co.</u>, 2010 WL 4117038, * 4 (S.D. Ala., Sept. 23, 2010)(Held it appropriate to consider claim for punitive damages when determining the jurisdictional amount in controversy).

Despite Benandi's contentions to the contrary, his settlement demand for $92,000.00 is not purely speculative but is, instead, based upon the treating physician's records which were provided to Mediacom in support of the demand and Benandi's calculation of the specific cost of the surgery he requires in the future, as well as his

contention that he is entitled to lost wages and income and punitive damages for Mediacom's conduct in:

A. Wantonly failing to secure, stow, store, make safe and/or remove fiber optic cable from the right of way.

B. Wantonly failing to provide warning of the presence of unsecured, unstowed, and unstored fiber optic cable.

C. Wantonly leaving fiber optic cable in a location where it put pedestrians, bicyclists, runners, and others at risk of injury.

D. Wantonly failing to adequately train its employees.

E. Wantonly failing to adequately supervise its employees.

F. Wantonly failing to inspect, maintain, repair, and/or service fiber optic cables.

(Doc. 1-1 at ¶¶ 11, 12). Consequently, Mediacom has established by a preponderance of the evidence that the amount in controversy in this case more likely than not exceeds $75,000, exclusive of interest and cost. Mediacom has, therefore, satisfied its burden of proof in light of the allegations of the Complaint, Benandi's settlement demand, and the other evidence of record.

## CONCLUSION

For the reasons stated above, it is recommended that plaintiff's motion to remand this case to the Circuit Court of Mobile, Alabama, be **DENIED**.

The attached sheet contains important information regarding objections to this Report and Recommendation.

**DONE** this 30th day of September, 2011.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

# RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

Objection. Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within [fourteen] days[4] after being served with a copy of the recommendation, unless a different time is established by order." The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party=s arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

Transcript (applicable where proceedings tape recorded). Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

Done this 30th day of September, 2011.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE

---

[4] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).